Bland, Chancellor.
These cross-caveats standing ready for hearing, and the solicitors of the parties having been fully heard, the proceedings were read and considered.
By the second article of the rules and orders of the 15 th of April, 1782, for the direction of surveyors, it is declared, that £ upon receipt of any common warrant you are to note down in a book, to be kept by you for that purpose, the time of your receiving it, the quantity of acres included therein, the date thereof, and. at what place, the person who obtains it, locates the same; and, when any other person desires to locate a warrant on land which some other person has already entered a warrant to affect, you shall, if required, produce your book of entries, and shew him that entry or location, if such demand be made at your house, or any other place where your book of entries shall be.’ And by the nineteenth article of the same set of rules, it is declared, that£ you are not, after the receipt of these instructions, to suffer any person to run out the lines of or execute any warrant for you, unless an assistant properly qualified; and to prevent all disputes about the priority of entries, or locations of land, no assistant shall presume to receive or enter the location of any warrant whatever, that power being solely vested in the surveyor.’ (a)
These regulations appear to have been taken almost verbatim from those given to surveyors on the 5th of December, 1768. (b) And yet it seems to be admitted, notwithstanding they have been so long in force, that there has been hitherto no adjudication in the- *260 land office, or none now to be found there on questions arising out of any state of things similar to that presented by these caveats.
It was contended, on the part of the Rail Road Company, that an assistant surveyor is only prohibited from receiving and entering the description of the location of a common warrant; but that he may receive the warrant and execute it without its being first delivered into the hands of the surveyor.
But it is clear, that all common warrants must be first lodged with the principal surveyor of the county before his assistant can be permitted to execute them in any way whatever. The second article explicitly requires four things to be entered and noted in the surveyor’s book in all such cases. First, the time of receiving the warrant; second, the quantity of acres included therein; third, the date thereof; and fourth, at what place the person who obtains it locates the same. The three first of these notations are peremptorily required in all cases; but the last, it is evident, from its nature, and the express language of the rule itself, can only be made £ when any person desires to locate a warrant.’ The restriction imposed upon assistant surveyors, by the nineteenth article, in the clearest terms, embraces all four of these notations; it is declared, that £ no assistant shall presume to receive or enter the location of any warrant whatever.’ The one book in which all these entries are directed to be made, is to be kept by the surveyor; he alone, therefore, can make them, and produce that book to all other holders of warrants, who may come to have them entered and located on lands to which they may wish to acquire a right of pre-emption from that date, by giving and entering a special description of them. The obvious and expressly declared intention of these regulations is, £ to prevent all disputes about the priority of entries or locations of .land.’ But this object could not be attained, if the principal and assistant were each allowed to receive entries and locations, each of which was to be considered as equally available; nor could any one ascertain, from a view of the books and proceedings of either the principal or assistant surveyor alone, whether any other person had already entered a warrant to affect the land he wished to obtain.
I am therefore, satisfied, that although every survey must be dated on the day on which it was actually made; yet, in this instance, the survey of Clara Fisher, having been improvidently and erroneously made by the assistant, before the warrant had been lodged with and properly noted by the principal surveyor in *261 liis book, must be considered as void and unavailable as against all special entries and surveys made regularly and bona fide before that time, (c)
. But these regulations, made, in this respect, with the avowed intention of preventing disputes, ought not to be allowed to be so applied as, in any manner, to work that very mischief they were designed to prevent. Equity will not suffer any rule or legislative enactment, however positive, to be itself perverted into an instrument of fraud; or to be so used as to give any one, not ignorant of the facts and the bearing of the rule, an unjust and unfair advantage. The great statute of frauds itself is always so construed and applied as to prevent its being used as the means and cover of fraud, (d)
The intention of these rules is to give a right of pre-emption to him who should first, in the manner prescribed, designate' the land he proposed to purchase. The claimant of Clara Fisher had proceeded erroneously; and, because of that error, his right of preemption would, as against all other bona fide purchasers, be postponed from the 25th to the 29th of May. But, on seeing the exact sameness of the surveyor’s description of River's Bend, the location of which was made in the surveyor’s book on the 28th of May, with that of Clara Fisher, it seems to be difficult to resist the conviction, that the claimant of River's Bend, was fully apprised of the previous survey of Clara Fisher ; that he availed himself of ' the information it afforded, and designed to take an unfair advantage of the erroneous manner in which it had been made. Under such circumstances, to give the certificate of River's Bend a priority over that of Clara Fisher, would be to make these rules themselves the instruments of fraud. It would be like allowing a subsequent purchaser, with full notice, to avail himself of a defect in a conveyance, or of the statute of frauds in opposition to a fair, equitable, and known right; which would be contrary to all the principles of equity in this respect, and has never been permitted in any case whatever, (e)
*262 But it may be, that the claimant of River’s Bend, at the time he made his location in the surveyor’s book, had not any notice of the erroneous survey of Clara Fisher; because that location is in *263 general terms, and might have been fairly and properly intended to embrace the same vacancy, without any knowledge, at that time, of the survey of it under the name of Clara Fisher. And, besides, if the location of River's Bend, made in the surveyor’s book, corresponds fully with the survey of it, then the survey is such a following up of the right of pre-emption acquired by the location as will give date, to the perfected legal title, by relation, from the date of the location in the surveyor’s book; but if it does not so correspond, and there should be found any essential discordance between the location in the surveyor’s book, and the actual survey, then the perfected legal title of River's Bend, can only be carried back to the 5th of June, the date of the actual survey, and not to the 28th of May, the date of the location, (f) There is, therefore, room to doubt, whether the claimant of River's Bend made the location in the surveyor’s book with a full knowledge of the previous erroneous survey of Clara Fisher ; and also whether the survey does, in fact, essentially conform to the special location made in the surveyor’s book.
The decision of the Chancellor on a caveat in the land office is final, without appeal; and therefore, it has been the practice, in all eases of just doubt as to facts, or where a matter of much importance or difficulty presents itself, which can be left open after a patent shall have been issued, to permit each party to perfect his legal title, so as to allow the matter to be brought either before the Court of Chancery by a scire facias, or information to vacate the patent, or before a court of common law in an action of ejectment, or otherwise; and thus give to the parties the benefit of a more full and satisfactory investigation, and a final decision by the Court of Appeals in some one or other of those modes; and so virtually and in effect allowing them the benefit of an appeal as in ordinary cases, (g) For these reasons I shall allow each of these parties to obtain a patent.
Whereupon it is adjudged and Ordered, that each of the caveats before mentioned, be and the same is hereby dismissed; each party to pay his owm costs.

 Land Hol. Ass. 435.

 Land Hoi. Ass. 284.

 Wilson v. Mason, 1 Cran. 100.

 Mestaer v. Gillespie, 11 Ves. 627; Fermor’s Case, 3 Co. 77.

 Seward v. Hicks, 1718. — It appearing to the court, that George Seward had a warrant from the late lord proprietary, — that Thomas Smithson, upon very fraudulent allegations, had obtained a special warrant to resurvey the land in the bill mentioned, and patent granted thereupon, — it is therefore Decreed, that Thomas Smithson’s patent for the lands in the bill mentioned, be vacated, and that the com *262 plainants have a right to the said patents for the said lands; and that the defendant do surrender the said patent unto his lordship’s land office, to be vacated accordingly, with costs.
The said patents having been brought into court as directed,—
14th August, 1719. — Ordered, that the said patents be cancelled; which was done by tearing the seals off in open court: and Ordered, that a certificate thereof be made and sent to the provincial court, in order for their being noted in the records thereof. — Chancery Proceedings, lib P. L. fol. 419, 445.
The Attorney-General v. Biggs. — This information was filed on the 9th of August, 1796, by the attorney-general, at the relation of Richard Winchester and James Winchester, against William Biggs. Its object was to have a patent vacated, which had been obtained by the defendant. The defendant answered; a commission was issued, under which depositions were taken and returned, — upon all which the case was brought before the court.
28ft February, 1801. — Hanson, Chancellor. — The said cause standing ready for hearing, and coming on to be heard, the bill, answer, exhibits, depositions, and all other proceedings, were by the Chancellor read, and the arguments of the counsel on each side were by him heard and considered.
The complainants apply to this court to be relieved against a patent obtained by the defendant, on the ground, that at the time of obtaining it, he had had notice of the equitable title of Henry Zolf, to part of the land contained in the said patent, which part had been comprehended in a certificate of a tract of land called The Resurvey on Stoney Ridge, surveyed for the said Zolf, which the complainants are entitled to by an assignment from Norman Bruce, to whom the said Zolf had assigned, &c.
The defendant in his answer, expressly denies, that before obtaining his patent, he had received notice of the said equitable title; and it is by no means clear, that, agreeably to the rule established in this court, his answer can be considered as refuted. But it is perfectly clear that Norman Bruce, who knew of the defendant’s proceeding to obtain his patent, and in whom the said equitable title was at that time vested, permitted him to obtain his patent without making any objection, on account of the said equitable interest; although he opposed the said Biggs on other grounds, and actually obtained an order for the correction of Biggs’ certificate, as it originally was returned. Bruce then, under whom the complainants’ claim, by another established rule of this court, is to be considered as having forfeited all title to the aid of this court, on the ground of notice. And the complainants surely cannot be considered in a better situation than they would be in, if he had not made the assignment, — and, claiming under him, they ought to have made a full investigation of the circumstances attending his title, before they filed their bill. In short, whatever would have been decreed between the defendant and Bruce, in case Bruce had not assigned to them, is now to be decreed between them and the defendant.
Decreed, that the bill of Luther Martin, attorney-general, at the relation of Richard and James Winchester against William Biggs, be and it is hereby dismissed; that the said defendant William Biggs, be also hence dismissed; and that the said Richard and James Winchester do pay unto him the costs, by him sustained, in the defence of their suit against him, amounting, as taxed by the register of this court, to the quantity of three thousand eight hundred and seven pounds of tobacco.

 Cunningham v. Browning, 1 Bland, 311, 325.

 Johnson v. Hawn, Land Hol. Ass. 417.